The State, *ex rel.* Sleeth *et al., v.* Gordon *et al.*

No. 8958.

## The State, ex rel. Sleeth et al., v. Gordon et al.

Quo Warranto.—*Time as a Bar.—Corporation.—Statute of Limitation.*—After a user of corporate franchises for fifteen years, *quo warranto* against the persons acting as a corporation will not be entertained, in this State. Such a proceeding may, however, be limited in particular cases to a shorter period, where requiring a longer time would be unreasonable or unconscionable on account of the laches on the part of the relator.

Same.—*Turnpike Company.*—Where a turnpike company had used the franchises of such a corporation for nineteen years, under defective articles of incorporation, viz.: failing to set forth line of route or to describe it, etc., a prosecution by *quo warranto* against the persons in possession of such corporate franchises, to show by what right they are held, is barred by lapse of time.

From the Shelby Circuit Court.

*T. B. Adams, L. T. Michener, N. B. Berryman* and *R. W. Wiles,* for appellants.

*B. F. Love, E. P. Ferris, H. C. Morrison* and *J. S. Ferris,* for appellees.

Niblack, J.—This was an information in the name of the State, in the nature of a *quo warranto*, on the relation of Andrew R. Sleeth, William B. Fox, Hiram Bass and James Robbins, against Leonidas Gordon, Leander Kennedy, Joseph Little, Michael Hinds, Loretta Cory, Isaac N. Wilson, William Gordon and William Kaster, charging, and giving the court to understand and to be informed, that the defendants were and for a long time had been unlawfully exercising the powers of, and acting as, a corporation in the county of Shelby, under the name and style of The Shelbyville and Morristown Turnpike Company, pretending to have been organized in that name according to and under the provisions of an act of the General Assembly of this State entitled "An act authorizing the construction of plank, macadamized and gravel roads," approved May 12th, 1852; that the defendants, claiming to be such a corporation, were exercising control over, and had been and were demanding, as well as collecting, tolls

for travel on and upon a turnpike road situate in said county of Shelby, and were contracting and being contracted with as such corporation, when in truth and in fact there was and had been no such corporation, because the persons who attempted to organize themselves into a corporation under the name and style herein above stated, for the purpose of constructing and owning a gravel road, amongst whom were the relators above named and the defendants, did not unite in any articles of association, setting forth the line of route and the places to and from which it was proposed to construct the road, and did not file a copy of any articles of association in the recorder's office of Shelby county, that county being the one through which the proposed road was to pass; also, because in the pretended articles of association in which such persons did unite, the line of route and the places to and from which it was proposed to construct the road were not described, and a copy thereof was not filed in the said recorder's office of Shelby county, through which said road was to pass, which last named pretended articles of association were entered into on the 21st day of February, 1861 ; that the defendants were claiming and exercising the rights of a corporation under and by virtue of such pretended articles of association, and under no other authority, when in truth and in fact no corporation was legally formed by virtue of said so called articles of association ; that the relators were the owners and holders of stock in the pretended corporation, known as The Shelbyville and Morristown Turnpike Company, and as such were liable for the acts done by, and contracts made in the name of, such pretended corporation.    Wherefore the complaint prayed that the defendants might be required to show by what authority they were exercising the powers of a corporation, and, also, demanded a judgment of ouster, and all other proper relief. 2 R. S. 1876, p. 298, sec. 749.

The defendants demurred to the complaint, alleging, *First.* That the relators had no legal capacity to prosecute this action. *Second.* That the complaint did not state facts sufficient to

The State, *ex rel.* Sleeth *et al., v.* Gordon *et al.*

constitute a cause of action ; and the court sustained their demurrer. The relators declining to plead further, final judgment was rendered upon demurrer for the defendants. This appeal, consequently, brings before us only the question of the sufficiency of the information.

It is argued, in the first place, that the facts averred did not show the relators to have such an interest in the subject-matter of the action as entitled them to file an information in this case ; that, having participated in the organization of the so called pretended corporation, and having become stockholders therein, the relators are now estopped from complaining that no such corporation was in fact organized ; that, having participated in the acts and things necessary to form and to continue the organization in existence as a corporation *de facto*, up to the present time, the relators are not now entitled to a judgment of ouster against those specially in charge of the organization as a mere precaution against some mismanagement in the future.

This argument, in connection with others of a kindred character, involves an enquiry which might become one of very considerable interest in a proceeding like this, but the conclusion we have reached in this case, in some other respects, renders it unnecessary that we shall make a formal ruling upon any of the objections urged against the authority of the relators to prosecute this or any similar action.

It is argued, in the next place, that, waiving all other objections which might be urged, the relators are barred from the prosecution of this information by lapse of time. This objection also involves an enquiry which might be made to take a very wide range, and raises a question upon which it is difficult to formulate any well defined rule, inferable from the decided cases.

This difficulty is greatly promoted by the fact that very nearly all the objections to the sufficiency of the informations to which our attention has been directed were made upon motions for leave to file an information, the granting or with-

holding of such a motion being usually treated as a matter resting in the sound discretion of the court, a practice which does not prevail in this State where a demurrer affords the first opportunity of raising the question of the sufficiency of an information.

High, in his work on Extraordinary Legal Remedies, in reference to proceedings like the one under review, at section 659, says: "Long acquiescence on the part of corporators in the exercise by respondents of a corporate franchise may be sufficient to bar them from relief by information, and the fact that they show no right in themselves or in any other persons which depends upon their invalidating respondents' title is an important element in determining whether leave shall be granted to file the information, and these circumstances combining the application will be denied. * * * So the fact that the relator stands in the same situation with the respondent, and that the impeaching of respondent's title must necessarily dissolve the corporation, are proper circumstances to be taken into consideration by the court in refusing the application." Angell & Ames on Corporations, at section 743, lays down the rule that an information in the nature of a *quo warranto* will be refused when the right of the defendant has been acquiesced in for a length of time.

At common law the time within which the title to a corporate office might be impeached was indefinite, varying with the circumstances of each particular case. At length, however, the court of King's Bench set a limit to their discretion, and, in the famous Winchelsea causes, publicly declared their resolution to be that after twenty years of unimpeached possession of a corporate franchise no rule would be granted against the person in possession, to show by what right he held the franchise. That period of time was fixed in analogy to other cases of limitation.

Lord MANSFIELD, in announcing their resolution, in the name of the court, said " that twenty years was the *ne plus ultra,* beyond which the court would not disturb a peaceable

The State, *ex rel.* Sleeth *et al.*, *v.* Gordon *et al.*

possession of a franchise; but that in every case within twenty years, their granting the rule, or refusing to grant it, would depend upon the particular circumstances of the case that should be in question before them." That court afterwards, in 1791, having come to the conclusion that twenty years was much too long a period, limited their discretion in granting applications for information against persons in possession of a franchise to six years. This latter period was afterwards confirmed by act of parliament. See Stat. 32 Geo. III, 58; Angell & Ames, *supra;* 5 Bacon's Abr. 185.

In Michigan, where there was no statute limiting the time within which a writ of *quo warranto* might be issued, it was held that an information against a bank for a failure to comply with a provision of its charter as to the amount of specie to be paid in within the first two years, filed seven years after the bank had gone into operation, came too late. *People* v. *Oakland County Bank,* 1 Doug. Mich. 282.

In the case of *State, ex rel.,* v. *Bailey,* 19 Ind. 452, where the articles of association creating a railroad company were defective in not specifying the terminus of the road with sufficient certainty, but where such articles had nevertheless been properly filed in the office of the Secretary of State, thus affording notice to the State of the defect, and the State had for more than eight years failed to take advantage of the defect, it was held that the State had lost its right to proceed against the railroad company upon information in the nature of a *quo warranto,* by lapse of time.

We are not prepared to hold that the statute of limitations, *eo nomine,* has a complete application to an information like the one before us, but we think it safe to say that in analogy to the clause of the statute applying a limitation to all actions not specifically enumerated and limited, fifteen years ought to be considered as the *ne plus ultra,* beyond which such an information can not ordinarily be prosecuted, leaving it to the courts to limit proceedings in any particular case to a shorter period where longer time would be unavailing, unreasonable

or unconscionable, because of laches on the part of the State or of the relator.

We construe the averments of the information as in effect charging that the relators and respondents, with others, on the 21st day of February, 1861, entered into articles of association with the intention of forming a corporation to be known as The Shelbyville and Morristown Turnpike Company, for the purpose of constructing, owning and controlling the turnpike road referred to in the information, but that by reason of material defects in the articles of association, and in the proceedings under them, the persons signing the articles never became lawfully incorporated; that a part, if not all, of the persons who had signed these defective articles had, nevertheless, assumed, and ever since continued, to act as a corporation, adopting the name designed for the corporation intended to be formed, being then and long previously in the possession and control of the turnpike road referred to as above, under their assumed corporate name.

The fair inference, therefore, from the facts averred in the information, when taken in connection with the other fact that this action was commenced on the 9th day of February, 1880, is that the organization represented by the respondents had constituted a corporation *de facto* for a period of nearly nineteen years without objection from the relators.   Angell & Ames, *supra*, sections 69, 70, 71; *Albert* v. *State, ex rel. Atkinson*, 65 Ind. 413; *White* v. *State*, 69 Ind. 273.

The inference thus drawn constrains us to hold that the relators were barred by the lapse of time, if from no other cause, from prosecuting this information, and that the court did not err in sustaining a demurrer to the information.

The judgment is affirmed, at the costs of the relators.